SAVOY, Judge.
This is an action in tort by plaintiff against Cit Con Oil Corporation and its insurer, Indemnity Insurance Company of North America. Continental Casualty Company, the workmen’s compensation insurer of plaintiff’s employer, intervened seeking to recover compensation paid to plaintiff because of the injuries he sustained in the instant case.
After a lengthy trial on the merits,, the district judge rejected plaintiff’s demands and dismissed his suit. From this judgment plaintiff has appealed to this Court.
The issues involved in this appeal are whether defendant, Cit Con Oil Corporation, was guilty of negligence; whether plaintiff was guilty of contributory negligence or assumed the risk; and, the quantum of damages.
The evidence reveals that plaintiff had been employed as a truck driver for T.S.C. Motor Freight Lines, Inc. for fifteen (15) years. On February 3, 1959, he left Lafayette transporting a load to his employer’s terminal in Lake Charles. Then he was dispatched to the industrial plant of Cit Con Oil Corporation in Calcasieu Parish for the purpose of picking up a trailer loaded with crated wax to be transported to its destination in Houston, Texas. Plaintiff drove his employer’s Mack diesel truck, without a trailer attached,, to the main entrance of Cit Con Oil Corporation’s plant or refinery, where he stopped at the guardhouse near the main gate to obtain permission to enter the premises.
To reach the guardhouse, it was necessary to leave the public road and drive a short distance over the private roadway of Cit Con Oil Corporation, which passed under the concrete canopy in question. This canopy spanned the distance between two (2) buildings, and was approximately four and one-fourth (4}4) inches thick, fifteen (15) feet wide and fifty (50) feet long, and was supported by two (2) beams that were supported by vertical posts, which extended the *786 length of the canopy. The clearance under the beams to the roadway measured approximately twelve (12) feet five (5) inches. A sign located on both sides of the canopy indicated in four (4) inch letters the information, “CLEARANCE 12 FT.". Plaintiff admitted seeing the sign -facing him as he entered the plant.
After the guard on duty logged certain information, plaintiff proceeded seven (7) city blocks within the refinery, and located the trailer that had been delivered there the previous day by someone else. The trailer was loaded, and plaintiff proceeded to attach it to the diesel truck and return to the guardhouse at the main gate where he had been instructed to obtain the bill of lading. Plaintiff entered the guardhouse and conversed briefly with a different guard on duty, who had replaced the one on duty earlier; then, after obtaining his bill of lading, he entered his truck, warmed the motor to pump air in the tank for his air brakes, and then drove forward slowly. The distance from the main gate to the canopy was approximately twenty-three (23) feet.
As plaintiff drove the motor truck and trailer under the canopy, the top forward corner of the trailer struck the beams under the canopy,, knocking the canopy forward and downward. As it fell, it struck the top portion of the cabin and engine of the truck, coming to rest on the ground with part of the canopy resting across the front portion of the truck. Plaintiff was treated in the first aid room of the refinery.
Plaintiff maintains that Cit Con Oil Corporation breached its duty of care to him as a business invitee by virtually creating an entrapment, since, under the safety regulations instituted by Cit Con Oil Corporation on its premises, plaintiff was required to surrender himself to the complete control of its guards under penalty of arrest and that he was without authority to question the directions of the guards; that the agents of Cit Con Oil Corporation knew or should have known the height of the trailer and whether the trailer could be safely transported under the canopy near the main gate; that this fact was peculiarly within their knowledge, since, if the trailer was higher than the canopy clearance, it would have been entered into the premises through another gate and a log entry would have been made of that fact. Therefore, it is urged that it was gross negligence for the police guards to have directed plaintiff into the dangerous pathway of exit, which constituted a hidden danger as it was not observable to the naked eye, and this action created an entrapment of plaintiff.
Plaintiff also maintains that if the trailer entered the main gate and passed under the canopy, then Cit Con Oil Corporation was guilty of gross negligence in loading the trailer in such a manner as to cause the leading front end of the trailer to rise one-half (J/2) inch above the canopy clearance. In this connection, the doctrine of res ipsa loquitur is invoked.
The defendants maintain that the accident was caused solely and exclusively by the gross negligence and recklessness of plaintiff; that Cit Con Oil Corporation fulfilled all of its duties it owed the plaintiff; that the trailer involved in the accident was properly -loaded by its employees; and, that plaintiff suffered no injuries as a result of this accident.
The facts of this case show that plaintiff was an “invitee”; and the general rule of law is that the defendant, Cit Con Oil Corporation, owed plaintiff the duty to use ordinary care to have its premises in a reasonably safe condition for use in a manner consistent with the purpose of invitation,, or at least not to lead plaintiff into a dangerous trap or expose him to an unreasonable risk, but to give plaintiff adequate and timely notice and warning of latent or concealed perils which are known to it but not to plaintiff. See 38 Am.Jur., Negligence, Section 96, page 754.
It is true that Cit Con Oil Corporation maintained a tight security of its prem *787 ises, and that the guards held keys to the other gates, and would unlock those other gates to allow passage of certain vehicles such as a trailer too high to pass under the canopy in question. However, its employees had no control over the actual operation of transporting the truck and trailer, as this was the assignment of plaintiff and plaintiff’s employer. The clearance signs were adequately marked on the canopy. The log kept by the guards was primarily for the purposes of Cit Con Oil Corporation. The procedures followed as testified to were reasonable. In addition, the guard on duty as plaintiff left the main gate testified that he asked plaintiff if he had come in through the main gate, and plaintiff answered, “Yes.” Under these circumstances, Cit Con Oil Corporation fulfilled all of its duties to plaintiff.
We do not consider the canopy a latent or concealed peril or a dangerous trap as contended by plaintiff. The canopy itself was easily seen, and it was plaintiff’s duty to know whether he could safely pass under it. Plaintiff’s argument that Cit Con Oil Corporation was in a better position than he was to know the height of the trailer is without merit. Plaintiff had a duty to himself and to the public to know the machine he was operating and the size of the trailer.
With reference to the argument that the trailer was improperly loaded, the plaintiff did not introduce any evidence to this effect. Evidence introduced by defendants reveals that the trailer had been loaded properly, and was in fact lower after being loaded with a weight of 26,000 pounds. The doctrine of res ipsa loquitur is not applicable to the facts of this case.
The record reveals varied evidence that supports the contention that plaintiff was contributorily negligent. There is a conflct in the evidence as to whether the dock foreman of T.S.C. Motor Freight Lines, Inc. warned plaintiff that the trailer was too high to pass under the main gate at the time that plaintiff was dispatched to the refinery, and also as to whether plaintiff was instructed of the route to follow and the rules of the plant or whether plaintiff already knew the rules of the plant and where to pick up the trailer. It is not necessary to settle this conflct of evidence, as we believe it was negligence on the part of plaintiff in driving under the canopy, knowing its height, and without knowing the height of the trailer he was pulling, but relying on the guards. Plaintiff simply assumed the trailer had been brought in through the main gate, and admitted he thought to himself, “Well, I can go through the main gate. If something is wrong, the guard will tell me something.” It was plaintiff’s duty to drive the truck pulling the heavily loaded trailer with care, and to look out for familiar dangers such as overhanging canopys, and the record shows that he failed to exercise reasonable prudence under the circumstances.
Plaintiff has cited several cases, but has placed particular emphasis on the cases of Gosey v. Kansas City Southern Railway Co., (La.App., 2 Cir., 1958), 100 So.2d 311; and New Orleans Terminal Co. v. Herrin Transportation Company, (La.App., Orl., 1949), 42 So.2d 905.
In the case of Gosey v. Kansas City Southern Railway Co., supra, plaintiff was unloading pulpwood from a truck to the boxcar of the defendant railroad. The railroad’s employees made a “flying” or “running” switch, detaching a railroad car while both the railroad car and engine were in motion, and switching the railroad car to a side track at the desired time. In so doing,, the boxcar plaintiff was loading was jarred; and plaintiff fell to the ground. This method of switching was considered as being negligence in itself because of the dangers involved. The defendant’s trainmen testified that it was their duty and practice to warn loaders of the train crew’s intention to do switching. The court held that the crew, by making the slightest observation, could have seen plaintiff loading the railroad car and could have seen the pulpwood truck *788 next to the railroad car. The court also held that there was no showing of any facts that would, in the least, indicate contributory negligence on the part of plaintiff; and that there was no reason for him to expect switching to be done upon the track where he was performing his labor, unless notice or warning was given to him to that effect.
The facts in Gosey v. Kansas City Southern Railway Co., supra, and the one before us on appeal are quite different in several particulars. The main difference is that Cit Con Oil Corporation had nothing to do with the actual operation of the trailer loaded with wax, as this was the assignment of plaintiff, an experienced truck driver, and the guards could properly assume that plaintiff would take any necessary precaution in passing under a canopy where the clearance was properly marked.
In the case of New Orleans Terminal Co. v. Herrin Transportation Company, supra, the evidence showed that the defendant’s truck proceeded slowly across the plaintiff’s tracks and passed under the first half of the plaintiff’s overhead gates suspended at the crossing on each side of the tracks, but struck and damaged the overhead gates on the opposite side, which was two (2) inches lower. The court held that the defendant’s truck driver had a right to use the street, and also a right to assume that the elevation of the overhead structures was the same on both sides of the tracks. That case is distinguishable from the one on appeal in that Cit Con Oil Corporation had marked clearly the height of the concrete canopy, and plaintiff had not passed under any other similar structure.
Plaintiff also maintains that it was the statutory obligation of Cit Con Oil Corporation to provide a clearance under the canopy to permit the passage of a vehicle having a height of twelve (12) feet six (6) inches. In support of this, plaintiff cites Section 1 of Act 99 of 1950 (now LSA-R.S. 32:274, as amended) together with the source statutes and the amending statutes, and directs our attention to the principle of historical construction of statutes as expounded in Dufore v. Daugereaux, (La. App., 3 Cir., 1960), 122 So.2d 666. Plaintiff maintains that the Act in 1950, by implication, required overhanging structures, such as the concrete canopy in question, to be raised or constructed to permit safe passage of a vehicle having a height of twelve (12) feet six (6) inches. Plaintiff urges that this is still the law, in spite of the subsequent amendment of the Act.
We do not believe such was the intention of the Legislature by the Act in 1950. However, we do not find it necessary to rule on this question of the intention of the Legislature, since we hold that the Act in 1950 was repealed by Act 582 of 1954,, which was the law at the time of the accident, and this Act did not require the altering of any structure to provide the clearance within the Act. The second paragraph of that Act provides in unambiguous terms:
“Provided, however, that neither the State nor any subdivision thereof nor any person, firm or corporation in the State of Louisiana shall be required to raise, alter, construct or re-construct any underpass, wire, pole, trestle, or other structure to provide such clearance.”
Therefore, Cit Con Oil Corporation did not owe any duty to plaintiff to raise its canopy to provide a clearance of twelve (12) feet six (6) inches.
Although there is some conflict in the testimony, after carefully examining the record, we concur with the findings of the trial court that Cit Con Oil Corporation did not fail in any duty to plaintiff and was not negligent; and that in any event, the plaintiff assumed the risk and was guilty of contributory negligence which was the proximate cause of the accident.
In view of our determinations relative to the issues of liability, it is not necessary to discuss the issue of quantum.
*789 For the reasons assigned, the judgment ■of the district court is affirmed at appellant’s costs.
Affirmed.